## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONNIE L. MOUNGLE** | **CIVIL ACTION** |
| **VERSUS** | **NO.  15-3905** |
| **ORLEANS PARISH SHERIFF DEPT.,**<br>**SHERIFF MARLIN GUSMAN** | **SECTION "H"(4)** |

## REPORT AND RECOMMENDATION

      This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  On October 27, 2015, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by conference telephone call.[2]  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

I.     **Factual and Procedural Background**

    A.     **Complaint**

      The plaintiff, Ronnie L. Moungle ("Moungle"), was an inmate housed in the Orleans Parish Prison system ("OPP")[3], filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Orleans Parish Sheriff Marlin N. Gusman and the Orleans Parish

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims.  The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 10.  The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

[3]On December 24, 2015, the plaintiff advised the Court of his change of address to Dixon Correctional Institute in Jackson, Louisiana.  Rec. Doc. No. 12.

Sheriff's Department.  Moungle alleges that the Orleans Parish jails he was held in, including the temporary tents, CTA-1-1, the old OPP unit, Templeman 5 and TDC-B-2-West, were condemned during his incarceration from 2011, 2012, 2013 and 2015, and posed inhumane living conditions. He claims that these areas had mold, rust, leaking ceilings and toilets, dampness, and wet floors. Under a broad reading, he contends that this caused him to have head colds, dizziness, runny nose, burning eyes, chest congestions, chest pains, sinus and breathing problems, and an irritated throat. He claims also to have suffered with sleeplessness, pain and suffering, and mental issues.  He seeks monetary relief for his damages.

      **B.**      *__Spears__* **Hearing**

Moungle testified that he is sixty years old and is incarcerated on a thirty-one (31) month sentence for possession of stolen goods.  He testified that he was transferred from the B.B. "Sixty" Rayburn Correctional Center to the Orleans Parish Prison system ("OPP") on May 20, 2015.  He was placed in a cell on the first floor of Conchetta Jail ("CTA").  He stated that, after a couple of days, he took sick with breathing problems, shortness of breath, dizziness, and headaches.  He spoke to the nurse and she advised him to complete a sick call request.  He stated that he knew he did not have money, so he did not complete the forms right away.  When his money was transferred from his prior facility, he began completing sick call requests but was never called to see the doctor about these symptoms.  He was soon sent to the TDC facility for a reentry program.  His stated that his symptoms did not improve and may have gotten worse.

Moungle also testified that he eventually saw a doctor, who was Vietnamese, and did not understand anything Moungle told him.  Moungle conceded that the same doctor understood enough to know he needed to be treated for high blood pressure and diabetes based on his prior medical

records.  He claims, nevertheless, that the doctor did not specifically treat his sinus symptoms, which he was told could have been caused by his other medications.

Moungle stated that he filed numerous grievance complaints for which he received no responses.  He indicated that he wrote to Sheriff Gusman and received no response.  When he submitted grievances to the Sheriff's assistant, Ms. Lindsay, she eventually had people from her office visit him to address his concerns.  Moungle also stated that he wrote to a group in Florida called the "Jail Monitors" who also wrote him back and eventually visited him at the jail.

Moungle further stated that he continued submitting sick call requests, and then denied or recanted his suggestion that the prison would not treat him if he had no money.  He instead indicated that he would be treated and seen but not provided specific medication for his congestion and sinus complaints.  He instead received regular treatment and medication for his high blood pressure and diabetes.  He complained that the medical personnel would not call him to a doctor visit for his sinus symptoms, although he conceded that he would advise the doctor at every visit that he was still having those symptoms.

Moungle stated that he sued Sheriff Gusman "because he is in charge."  He instead complained that the Sheriff did not personally respond to the grievance complaints about his medical care which were addressed to the Sheriff.  Moungle opined that the Sheriff should have known about his problems because of these grievance complaints and because the Sheriff's assistant, Ms. Lindsay, knew about his complaints.  Moungle also stated that, now that he has been moved to the new jail facility for a few weeks, his symptoms have subsided.

3

## II.     Standard of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.     Analysis

Moungle asserts that the OPP facilities in which he was housed had mold and dampness which led to his breathing difficulties and sinus or allergy like symptoms, and that he did not receive

4

the medical attention he thought his symptoms required.  Having considered Moungle's claims as supplemented by his testimony at the *Spears* Hearing, it appears that his main focus relates to the alleged lack of medical treatment without emphasis for the actual alleged conditions leading to his congestion.  Nevertheless, as outlined previously, Moungle named two defendants, the Orleans Parish Sheriff's Office and Sheriff Gusman.  For the following reasons, he has not identified a basis for either defendant to be held liable under § 1983.  In addition, even if he were to identify a viable defendant, his claims of medical indifference and unsanitary conditions do not rise to the level of a constitutional violation and are therefore frivolous.

A.    **Improper Defendant**

Moungle has named the Orleans Parish Sheriff's Office as a defendant in this matter.  The Orleans Parish Sheriff's Office and the prison facilities are not suable entities or persons subject to suit under § 1983.  For the following reasons, Moungle's claims against the Sheriff's Office must be dismissed.

The Orleans Parish Sheriff's Office is not a suable entity in this federal court.  In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, suit must be brought against a person with capacity to be sued, and state law governs whether a defendant has that capacity.[4]  Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person," which is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership."  La. Civ. Code Ann. art. 24.  In Louisiana, however, a parish sheriff's offices is not a legal entity capable of suing or being sued.  *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D.

---

[4]Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  *See* Fed. R. Civ. P. 17(b).

La. 1988). Thus, for purposes of suit in a federal court, the Orleans Parish Criminal Sheriff's Office is not a proper defendant under Fed. R. Civ. P. 17.

For these reasons, Moungle's claims against the Orleans Parish Criminal Sheriff's Office are frivolous and otherwise fail to state a claim for which relief can be granted.

### B.    No Basis for Sheriff Gusman's Liability

Moungle named Sheriff Gusman as a defendant, because he was "in charge" of OPP and did not personally respond to Moungle's grievance complaints. To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros*., *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson,* 454 U.S. 312 (1981). Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to liability on a claim for damages under §1983. Thus, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A defendant would be liable under § 1983 only if he or she were "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also*, *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

In this case, Moungle does not allege that the Sheriff was personally involved with his medical care or personally advised of the alleged unsanitary conditions to which he was exposed.

Moungle instead speculates that the Sheriff should have known about his needs through the grievance complaints which he claims were addressed to the Sheriff.

Assuming the grievances were forwarded to the Sheriff personally, Moungle has failed to state a non-frivolous claim against the Sheriff.  Inmates generally have no constitutional right under the First or Fourteenth Amendments to an effective grievance procedure.  *See Wilcox v. Johnson,* 85 F.3d 630, 1996 WL 253868 at *1 (6th Cir. May 13, 1996)(Table, Text in Westlaw); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994); *Buckley v. Barrow,* 997 F .2d 494, 495 (8th Cir.1993); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991); *Flowers v. Tate,* 925 F.2d 1463, 1991 WL 22009 at *1 (6th Cir. Feb. 22, 1991) (Table, Text in Westlaw).  In other words, there is no constitutional guarantee that the inmate will receive a response from or be satisfied with the responses by the prison officials.  *Id.*  Thus, with regard to the Sheriff's alleged lack of response to the grievances, Moungle has not alleged a constitutional violation.  His frustration with the lack of response is not cognizable.  Title 28 U.S.C. § 1997e(e) (requiring a direct physical injury to recover for mental and emotional damages).

Moungle also has not alleged that he has suffered any injury directly resulting from any order, training, or other policy implemented by Sheriff Gusman that would create a vicarious liability under § 1983.  *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

Moungle has not alleged a personal action or connection that would render Sheriff Gusman liable under § 1983 or liable for the actions or inactions of his subordinates or the medical staff at the jail.  For these reasons, Moungle's claims against the Sheriff as a supervisory official over the

prison are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

    C.     **Eighth Amendment and Conditions of Confinement**

Even if Moungle had identified a proper defendant, he has not alleged or established a constitutional violation resulting from the conditions of his confinement in order to recover under § 1983. The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' ... or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As discussed previously, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit*, 641 F.2d at 346. Furthermore, the official must have acted with deliberate indifference to a known risk of harm to be liable under § 1983. An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent

8

response to a substantial risk of harm." *Thompson*, 245 F.3d at 459.  The plaintiff must prove facts sufficient to show "at a minimum, that the prison officials realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987).  Applying these factors to the instant case, Moungle has not alleged a constitutional violation based on the conditions in OPP.

### 1.    Areas of Mold, Dampness, and Wetness/Leaking Toilets

The conditions described by Moungle, while plainly not comfortable or pleasant, do not rise to a level of seriousness to be considered a constitutional violation.  The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982).  The Courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In keeping with this philosophy, the federal courts have recognized that certain institutional problems such as dust, mold, and stale air do not amount to a constitutional violation.  *See*, *e.g.*, *White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted*, 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012).  To the extent Moungle asserts that these factors were present in Conchetta and other areas within OPP, he has not stated a constitutional violation.

Furthermore, even assuming that Moungle's stuffy nose, sore throat, and other irritations were contracted in or associated with the conditions at OPP, he has not established that any of the defendants intended a risk of serious harm to his person or intentionally ignored that risk. Although Moungle indicates that his grievances were not addressed, he made clear that prison officials visited him to discuss and address his complaints and allowed outside visitors from "Jail Monitors" to meet with him about the conditions of his confinement. Moungle acknowledged that his placement in these locations was temporary while officials awaited the opening of the new jail facility, where he now is house. In addition, as will be further discussed, Moungle ultimately concedes that his sick call requests were answered, although not to his satisfaction. Moungle was regularly treated for his serious illnesses, high blood pressure and diabetes, and had an opportunity at each visit to discuss his other congestion and sinus or allergy symptoms with the nurse and doctor.

Thus, even with the presence of mold and dampness in the areas to which he was assigned, he has not stated a constitutional violation. *See McCarty v. McGee*, No. 06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation."). The jurisprudence has repeatedly held that the presence of mold and dampness in a prison setting does not render an inmate's confinement unconstitutional. *See*, *e.g.*, *Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation),

*adopted*, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)).

Thus, Moungle's allegations of mold, leaking fixtures, and dampness fail to establish constitutional violations. *See Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib*, 138 F.3d at 215). "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional." *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim.). As one federal appellate court has concluded, "[l]leaky toilets and puddles are unpleasant but not unconstitutional." *Smith v. Melvin*, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. Jul. 26, 1996); *accord Davis*, 2010 WL 890980, at *9; *Wilkerson v. Champagne*, No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

For the foregoing reasons, Moungle's claims are frivolous and otherwise fail to present a claim for which relief can be granted. The claims should be dismissed for this reason under § 1915, § 1915A, and § 1997e.

2.     **Adequate Medical Care**

Moungle alleges that he did not receive treatment for his congestion and sinus or allergy like symptoms, although he acknowledges that he was regularly treated for his serious conditions, including high blood pressure and diabetes.  Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983.  *Estelle*, 429 U.S. at 104-105.  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).

As noted above, a prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk.  *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir.2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment.  *Estelle*, 429 U.S. at 104.  This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  *Id*.  Thus, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.  *Id.*

12

However, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). Rather, a plaintiff must show that defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In this case, Moungle acknowledges that he discussed his symptoms on many occasions with the doctor, and the doctor did not prescribe any medication. He suggests that the doctor saw no need to provide treatment and felt that his symptoms could have been related to or caused by his other medication. This does not suggest the type of indifference to a serious medical need for purposes of the Eight Amendment. Moungle's disagreement with medical treatment fails to reach the level of a constitutional violation. *See, e.g.*, *Domino*, 239 F.3d at 756. A healthcare provider's decision to provide different treatment or no treatment is a matter for medical judgment that is not without more to be second-guessed by a court. *See Gobert*, 463 F.3d at 346.

For the foregoing reasons, Moungle's medical indifference claims are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

## IV.   Recommendation

It is therefore **RECOMMENDED** that Moungle's § 1983 claims against the defendants, the Orleans Parish Sheriff's Office and Sheriff Gusman, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this ____10th____ day of February, 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

14